**In re M.H.**

2003-Ohio-7371.]

Court of Common Pleas of Ohio,
Medina County, Juvenile Division.

No. 2003 06 DQ 0295.

Decided Oct. 3, 2003.

6

Matthew Razavi and F. Peter Costello, Medina County Assistant Prosecuting Attorneys, for the state.

Michael L. Laribee, for the juvenile.

JOHN J. LOHN, Judge.

{¶ 1} This matter came on for hearing before John J. Lohn, Judge of the Court of Common Pleas for Medina County, Juvenile Division, on September 25, 2003. The hearing was on the juvenile's motion to suppress filed August 8, 2003.

{¶ 2} Present in court were the juvenile and her attorney, Michael Laribee of Medina, and the juvenile's mother. Assistant County Prosecutors Matthew Razavi and F. Peter Costello appeared on behalf of the state of Ohio.

{¶ 3} The complaint charged the juvenile with delinquency by underage possession or consumption of beer or intoxicating liquor in violation of R.C. 4301.69(E)(1) and delinquency by possession of drug paraphernalia in violation of R.C. 2925.14(C)(1). Underage possession is a misdemeanor of the first degree if committed by an adult. Possession of drug paraphernalia is a misdemeanor of the fourth degree if committed by an adult. The delinquent acts allegedly occurred on April 26, 2003. The complaint was filed June 2, 2003.

{¶ 4} The motion to suppress alleges that Medina County sheriff's deputies made a warrantless and illegal entry into a motel room in which the juvenile was found. A search of the room turned up incriminatory evidence against the juvenile. Thereafter, according to the motion, the deputies arrested the juvenile and questioned her without first advising her of her *Miranda* rights.

8

{¶ 5} The state argues that the man who rented the room consented to the deputies' entry into the motel room. The state further argues that the deputies were not required to advise the juvenile of her rights because she was not under arrest when she was questioned.

{¶ 6} On the evening of April 26, 2003, Edwin H. Good, a 24-year-old convicted forger, rented a room at the Super 8 Motel in Seville. He informed the motel clerk that there would be one person—him—staying in the room.

{¶ 7} Good invited three friends to his room: 19-year-old Marvin Bush, Bonnie Ondich, whose age is unknown but who appears to be younger than 21, and the juvenile, a 17-year-old girl.

{¶ 8} The juvenile and Good testified that the juvenile had permission from her mother to stay overnight at the motel. This testimony is implausible and unbelievable. Mrs. Hart did not permit her 17-year-old daughter to spend the night at a motel, drinking with a 24-year-old man. The court finds that the juvenile did not have her mother's permission to be at the motel for the night.

{¶ 9} The staff at the motel saw Good allow the juvenile and Bonnie Ondich into his room. The girls had overnight bags with them. They carried paper bags containing bottles, which the staff believed were bottles of beer or liquor. One of the girls then let Bush into the room. Loud noises came from the room, as if the occupants were having a party. The motel staff suspected that the females were underage and were drinking alcohol. They called the sheriff's office to investigate.

{¶ 10} Deputy Daniel Kohler, who has been a sheriff's deputy for eight years, arrived at the motel. He knocked on the door to the room. Good answered the door. Deputy Kohler told Good that he was a sheriff's deputy and that there was a report of suspected underage drinking, and he asked permission to look in the room. Good opened the door wider and backed up. Deputy Kohler and his partner entered the room.

{¶ 11} Deputy Kohler immediately saw a quantity of beer and ice in the bathroom sink. A bottle of Baccardi rum, unopened, was on the bathroom counter. Deputy Kohler instructed the occupants to have a seat on the bed.

{¶ 12} All the occupants had been drinking. During the investigation Deputy Kohler spoke with Bonnie Ondich. He obtained her consent to search her purse. He found a marijuana pipe inside it. He asked Ondich about the pipe, and she stated that it was the juvenile's pipe. The deputy asked the juvenile about the pipe, and she confirmed that it was hers. Deputy Kohler had not advised the juvenile of her *Miranda* rights before asking her about the pipe.

{¶ 13} The adults were issued citations. The juvenile was taken into custody, briefly. Her parents were called to pick her up.

{¶ 14} Numerous constitutional safeguards normally reserved for criminal proceedings are equally applicable to juvenile delinquency proceeding. *State v. Walls* (2002), 96 Ohio St.3d 437, 446, 775 N.E.2d 829. The juvenile's right to be free from unreasonable search and seizure by law enforcement officers is the same as if she were an adult. *In re L.L.* (1979), 90 Wis.2d 585, 592, 280 N.W.2d 343; *New Jersey v. T.L.O.* (1985), 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720. The juvenile's Fifth Amendment and Sixth Amendment rights are the same as if she were an adult. *In re Gault* (1967), 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527; *In re Winship* (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368.

{¶ 15} **Standing.** The juvenile argues that she has standing to object to the deputies' warrantless entry in the motel room. At the suppression hearing, the court provisionally ruled that she did have standing, and it proceeded with the hearing. Now the court will revisit the issue.

{¶ 16} Fourth Amendment rights are personal rights. They cannot be vicariously asserted. *Rakas v. Illinois* (1978), 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387. The protections of the Fourth Amendment do not turn upon issues of ownership developed and refined through the common law of property. *United States v. Salvucci* (1980), 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619. The "capacity to claim the protection of the amendment depends not upon a property right in the invaded place but upon whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion." *Mancusi v. DeForte* (1968), 392 U.S. 364, 368, 88 S.Ct. 2120, 20 L.Ed.2d 1154. Thus an overnight guest in a private home has a reasonable expectation to be free from unreasonable searches by the police. *Minnesota v. Olson* (1990), 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85.

{¶ 17} Good rented the room on the pretext of being the only overnight occupant. Indeed, the motel clerk testified that if additional persons were staying in the room, Good would have had to pay a higher rate.

{¶ 18} The juvenile had no legitimate expectation of privacy in the motel room. The juvenile was on the property as a permittee of Good, the person who rented the room. Good acquired possession of the room legally. But he falsely stated that he would be the only overnight occupant. Good did not have the privilege to have overnight guests in his room because he never paid for the privilege. The juvenile was not an overnight guest under the analysis of *Minnesota v. Olson,* supra. The juvenile's expectation of privacy in the motel room—a rendezvous for criminal and tawdry behavior—was unreasonable.

{¶ 19} Moreover, the room was rented in order to facilitate the commission of several crimes—underage drinking, possession of drugs and drug paraphernalia, and contributing to the delinquency of a minor. The juvenile's primary

purpose in being at the motel room was to break the law and abuse her morals. A guest has no Fourth Amendment interest in a room used primarily to commit a crime or to further a criminal enterprise. *Minnesota v. Carter* (1998), 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373.

{¶ 20} Accordingly, the juvenile had no cognizable Fourth Amendment interest in the motel room. She has no standing to object to the deputies' warrantless entry into the room.

{¶ 21} **Consent.** Assuming, arguendo, that the juvenile has standing to assert a Fourth Amendment interest in the premises, the juvenile argues that the warrantless entry into the motel room was illegal and not within any of the exceptions to the warrant requirement.

{¶ 22} The Fourth Amendment does not prohibit all warrantless searches, only unreasonable ones. Where a person voluntarily consents to a search, the search is not unreasonable. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854. Additionally, a third person with common authority over a place may consent to a search of premises. *United States v. Matlock* (1974), 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242.

{¶ 23} The deputies told Good they were investigating possible underage drinking in the room. They asked if they could look around inside. Good said nothing, took a few steps backwards, and opened the door for both deputies to enter. An invitation or consent to enter may be implied as well as expressed. See *United States v. Turbyfill* (C.A.8, 1975), 525 F.2d 57, 59. When he stepped aside and allowed them to enter, Good consented to the deputies' entry into the motel room. *State v. Chiampo*, Wayne App. No. 02CA0042, 2003-Ohio-2422, 2003 WL 21078082.

{¶ 24} Accordingly, the deputies' warrantless entry into the motel room was not an unreasonable search under the Fourth Amendment, because they had the voluntary consent of the person who rented the room.

{¶ 25} *Miranda* **warnings.** The juvenile argues that her statement to Deputy Kohler that the marijuana pipe was hers should be suppressed because the deputy failed to advise her of her rights in accordance with *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

{¶ 26} *Miranda* rights are not required for all questioning. Only persons who are in custody are entitled to the *Miranda* procedural safeguards. The Court of Appeals for Warren County stated: "An interrogation, as conceptualized in *Miranda v. Arizona*, must reflect a measure of compulsion above and beyond that inherent in custody itself before it will be considered a 'custodial interrogation.' A custodial interrogation occurs when questioning is initiated by

law enforcement officers. The duty to advise a suspect of his constitutional rights arises only when questioning by law enforcement officers rises to the level of a custodial interrogation." (Citations omitted.) *State v. Becherer* (Feb. 14, 2000), Warren App. No. CA99–07–085, 2000 WL 190039.

{¶ 27} Deputy Kohler entered the motel room, saw the alcohol, and ordered the four occupants to sit on the beds. This was done to maintain the status quo and to protect the officers' safety. The juvenile was under a *Terry* investigative detention. See *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Deputy Kohler's inquiry concerning the marijuana pipe was a preliminary question—by which he attempted to confirm or dispel his suspicion that the juvenile was involved in a crime. Incriminating statements made to a police officer prior to an arrest are admissible because *Miranda* applies only to custodial interrogation. *State v. Perry* (Oct. 9, 1996), Summit App. No. 17754, 1996 WL 577653.

{¶ 28} *Miranda* warnings were not required before the deputy questioned the juvenile about the marijuana pipe, because she was not in custody at the time the question was asked.

{¶ 29} The juvenile's motion to suppress is denied. This case will be set for adjudication before the magistrate.

So ordered.